IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| DYLAN BLANKENSHIP, MARCO GONZALEZ, and ARMANDO VEGA, Individually and On Behalf of Others Similarly Situated, | ) ) ) ) ) |
| Plaintiffs, | ) ) |
| vs. | ) ) Case No. CIV-15-1057-D |
| KWICK RENTALS, LLC and K&L RENTALS, LLC, | ) ) ) |
| Defendants. | ) ) |

## O R D E R

Before the Court is Plaintiffs' Motion for Conditional Certification and Notice to Potential Class Members Pursuant to 29 U.S.C. § 216(b) [Doc. No. 31]. The Motion is fully briefed and at issue.[1]  For reasons that follow, the Court grants the Motion in part.

Plaintiffs bring suit against their former employers to recover unpaid overtime wages allegedly due under the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201-19.[2]  Plaintiffs seek to pursue claims for themselves and other similarly situated employees in a collective FLSA action under § 216(b).  By the instant Motion, Plaintiffs seek conditional certification of a proposed class of similarly situated persons, and approval of a form of notice to be sent to potential class members.  Defendants Kwick Rentals, LLC and K&L Rentals, LLC oppose the Motion in all respects.

---

[1]  Defendants have filed a response [Doc. No. 41], and Plaintiffs have replied [Doc. No. 41].

[2]  The original Complaint named three individual plaintiffs, but Plaintiff Dylan Blankenship voluntarily dismissed his action by notice [Doc. No. 7] filed pursuant to Fed. R. Civ. P. 41(a)(1)(A).

**Plaintiffs' Allegations**

Defendants are related limited liability companies that supply rental equipment, such as portable toilets, lighting, and utility trailers, to oilfield production areas in Oklahoma, Texas, and Kansas. Plaintiffs were jointly employed by Defendants "as fuelers and delivery drivers." *See* Compl. [Doc. No. 1], ¶ 19. Workers with these and other job titles "deliver, set up, and maintain oilfield rental equipment." *Id*. ¶ 20. Plaintiffs were compensated according to Defendants' wage policy of paying workers a combination of salary, per diem, and mileage. The Complaint alleges Plaintiffs were non-exempt employees under FLSA entitled to overtime pay for hours worked in excess of 40 hours in a single workweek, that they were routinely scheduled "for 10 or more hours each work day" and "as many as 7 days in a workweek," and that they did not receive overtime pay. *Id*. ¶¶ 25, 29-30, 32-33, 35. Plaintiffs claim Defendants violated 29 U.S.C. § 207 by failing to pay them "overtime at rates not less than one and one-half times their proper regular rates" and Defendants' conduct constituted a willful FLSA violation. *Id*. ¶¶ 56-57. Plaintiffs make similar allegations on behalf of other salaried employees of Defendants during the past three years for purposes of a collective action under 29 U.S.C. § 216(b). *Id*. ¶¶ 36-51. Plaintiffs seek to recover unpaid overtime compensation, liquidated damages, attorney fees, and costs.

Defendants previously challenged the sufficiency of Plaintiffs' Complaint by a motion for judgment on the pleadings, arguing primarily that the factual allegations were conclusory and failed to show Plaintiffs worked more than 40 hours in any one-week period. Defendants also asserted Plaintiffs' position of "delivery driver" was covered by an FLSA exemption for

employees subject to the Motor Carrier Act ("MCA"), 49 U.S.C. § 31502.  *See* 29 U.S.C. § 213(b)(1).  The Court rejected these contentions and found the Complaint was sufficient to state a plausible FLSA claim.  *See* Order of May 9, 2016 [Doc. No. 47], pp.5-6.

### Plaintiffs' Motion

By the instant Motion, Plaintiffs take the first step in their pursuit of a collective action by seeking certification of a class of similarly situated individuals who would receive notice and an opportunity to join an overtime wage suit against Defendants.  Plaintiffs ask the Court to grant conditional certification of a putative class defined as follows:

> All current and former employees of K&L Rentals, LLC and Kwick Rentals, LLC, employed during the past three (3) years who received a salary or a salary plus mileage and/or a per diem, and who were employed as "Field Hands" (collectively, "Putative Class Members").

*See* Pls.' Mot. Conditional Certification [Doc. No. 31], at 1.  In a footnote to this definition, Plaintiffs explain the reference to "Field Hands" as follows: "'Field Hands' is a general term used to describe the employees who performed the job duties set forth in the attached Declarations . . . .  There was no set job title for these employees." *Id.* n.2.  Attached to the Motion are sworn declarations of Plaintiffs Marco Gonzalez and Armando Vega and three individuals who have signed consent forms stating their desire to join any collective action against Defendants for overtime wages:  Chad Brewer [Doc. No. 23]; Laurencio Fraire [Doc. No. 24]; and Steve Flitz [Doc. No. 28].

The substance of both Plaintiffs' declarations is identical except for one paragraph stating their dates of employment.  *Compare* Gonzalez Decl. [Doc. No. 31-1] *with* Vega Decl. [Doc. No. 31-2].  Plaintiffs state they are domiciled in Oklahoma and they worked "in

the field, at third party energy company sites, or at Defendants' offices located in various cities in Oklahoma . . . or Jetmore, Kansas." *See* Gonzalez Decl. ¶¶ 2, 7; Vega Decl. ¶¶ 2, 7. The other declarants state the same domicile and describe their work locations in the same manner, except Mr Flitz is domiciled in Kansas and Mr. Fraire states only that he worked "in the field, at third party energy company sites." *See* Flitz Decl. [Doc. No. 31-3], ¶ 2; Fraire Decl. [Doc. No. 31-4], ¶ 6.

Plaintiffs state regarding their jobs: "I was referred to as a 'field hand' and performed duties which consisted of the following:"

• Delivered, cleaned and serviced portable bathrooms or port-a-potties;

• Delivered, transported, installed and maintained utility trailers;

• Delivered, transported, installed and maintained campers;

• Serviced, installed, maintained, delivered and fueled generators owned by Defendants;

• Installed, maintained and operated maxi heaters which were used to prevent oilfield equipment from freezing;

• Installed and maintained tarpaulins on drilling equipment;

• Delivered, installed, maintained and operated flow back iron piping used in the drilling process; [and]

• Maintained equipment in Defendants' shop.

*See* Gonzalez Decl. ¶ 5; Vega Decl. ¶ 5. Mr. Brewer states he was also referred to as a "field hand" and had the same job duties, except his work did not involve portable bathrooms or flow back piping. *See* Brewer Decl. [Doc. No. 31-5], ¶ 5. Mr. Flitz states he was a "field hand" but he had a different job duty and only two of the same duties:

4

- Delivered and maintained portable lighting equipment;

- Delivered, transported, installed and maintained campers; [and]

- Serviced, installed, maintained, delivered and fueled generators owned by Defendants[.]

*See* Flitz Decl. ¶ 5.  Mr. Fraire states he "was referred to as a 'driver' or 'delivery driver'" and his job duties were:  "Delivered, cleaned and serviced portable bathrooms or port-a-potties;" and "Serviced bathrooms in campers."  *See* Fraire Decl. ¶ 5.

Regarding job titles, Plaintiffs each state:

Employees such as myself who performed the above job duties were generally referred to as "field hands."  Persons performing these jobs may have, additionally, been referred to as "fuelers," "septic tank technicians," "delivery drivers," or "shop hands."

*See* Gonzalez Decl. ¶ 6; Vega Decl. ¶ 6.  Mr. Brewer states the same first sentence regarding "field hands" but then says:  "Persons performing these jobs may have, additionally, been referred to as 'fuelers,' or 'service man.'"  *See* Brewer Decl. ¶ 6.  Mr. Flitz states the same first sentence, but says:  "Persons performing [his job duties] may have, additionally, been referred to as 'fuelers,' or 'delivery drivers.'"  *See* Flitz Decl. ¶ 6.  Mr. Fraire (who was referred to as a "driver" or "delivery driver") does not relate any other job titles.

Regarding compensation, Plaintiffs and Mr. Brewer each state:

During the course of my employment with Defendants,  I was paid a salary, mileage and per diem. . . .  The amount of mileage I received was not based on any actual mileage driven or traveled.  The mileage payment I received was another form of compensation or salary.

*See* Gonzalez Decl. ¶¶ 8-9; Vega Decl. ¶¶ 8-9.  Mr. Fraire makes the same statements, except:  "I was paid a salary.  I also received additional pay which I believe was a 'bonus.'"

*See* Fraire Decl. ¶¶ 7-8. It is unclear whether his statements regarding mileage are describing his "bonus" or another payment. Mr. Flitz states only: "During the course of my employment with Defendants, I was paid a salary of $1,750.00 per week." Flitz Decl. ¶ 8.

Regarding hours worked, all of the declarants make identical statements as follows:

> At all times during the course of my employment with Defendants, I worked in excess of 40 hours per work week. I routinely worked greater than 60 hours per work week. Often I worked over 80 hours per week. I did not ever receive overtime for any hours worked over 40 per work week.

> I was on call 24 hours a day, 7 days per week. I was often called out to work at night, on my off days, or after the work day was over. This was true for all "field hands."

> As part of a pattern, policy and practice, I was required by Defendants to alter my time sheets and not report all hours I worked. I am aware that Defendants maintained GPS tracking records which can document the hours that company vehicles were on a job site or in transit. I know that other employees did the same thing.

*See* Gonzalez Decl. ¶¶ 10-12; Vega Decl. ¶¶ 10-12; Flitz Decl. ¶¶ 9-11; Fraire Decl. ¶¶ 9-11; Brewer Decl. ¶¶ 10-12. Each declarant also states in an identical paragraph that "all of Defendants' employees who performed the [same job duties as he did], performed their jobs in the same manner" and "were paid in the same manner" as the declarant. *See* Gonzalez Decl. ¶ 17; Vega Decl. ¶ 17; Flitz Decl. ¶ 16; Fraire Decl. ¶ 16; Brewer Decl. ¶ 17.

In response to the Motion, Defendants raise numerous objections and present evidence that Plaintiff Marco Gonzalez was employed as a commercial driver and was subject to requirements of the Motor Carrier Act, for which the FLSA provides an overtime exemption. *See supra* page 2. Defendants' primary contention, however, is there are too many variations in job duties and wage payments among the proposed class to establish a "similarly situated"

group of employees.  In reply, Plaintiffs argue that the lenient standard for conditional

certification is easily satisfied and their proof is sufficient, and that differences among class

members are relevant only at a later stage of the class certification process.

### Standard of Decision

The FLSA provides for collective or class actions as follows:

> An action to recover the liability prescribed in either of the preceding
> sentences [regarding unpaid minimum wages and overtime compensation] may
> be maintained against any employer (including a public agency) in any Federal
> or State court of competent jurisdiction **by any one or more employees for**
> **and in behalf of himself or themselves and other employees similarly**
> **situated**.  No employee shall be a party plaintiff to any such action unless he
> gives his consent in writing to become such a party and such consent is filed
> in the court in which such action is brought.

29 U.S.C.A. § 216(b) (emphasis added).  Plaintiffs' Motion invokes a widely accepted

procedure for conditional class certification under FLSA's opt-in class mechanism, which

does not adopt the class action standards of Fed. R. Civ. P. 23 but employs an undefined

"similarly situated" standard.  *See Thiessen v. General Elec. Capital Corp.*, 267 F.3d 1095,

1105 (10th Cir. 2001).  In *Thiessen*, the court of appeals approved a two-tiered, *ad hoc* case-

by-case approach, which it explained as follows:

> In utilizing this approach, a court typically makes an initial "notice stage"
> determination of whether plaintiffs are "similarly situated."  In doing so, a
> court requires nothing more than substantial allegations that the putative class
> members were together the victims of a single decision, policy, or plan.  At the
> conclusion of discovery (often prompted by a motion to decertify), the court
> then makes a second determination, utilizing a stricter standard of "similarly
> situated."  During this "second stage" analysis, a court reviews several factors,
> including (1) disparate factual and employment settings of the individual
> plaintiffs; (2) the various defenses available to defendant which appear to be
> individual to each plaintiff; and (3) fairness and procedural considerations . . . .

7

*Id*. at 1102-03 (internal quotations and quotations omitted).  "The sole consequence of conditional certification is the sending of court-approved written notice to employees, who in turn become parties to a collective action only by filing written consent with the court." *Genesis Healthcare Corp. v. Symczyk*, 133 S. Ct. 1523, 1530 (2013) (citations omitted).

Under the *ad hoc* approach, the factual showing needed to satisfy FLSA's "similarly situated" standard at the notice stage depends on the nature of the alleged wage violations in a particular case, and a plaintiff need only show "a 'reasonable basis' for his claim that there are other similarly situated employees."  *See Morgan v. Family Dollar Stores, Inc*., 551 F.3d 1233, 1260 (11th Cir. 2008).  Stated another way, the conditional certification stage requires the plaintiffs to "make a modest factual showing that they and potential opt-in plaintiffs together were victims of a common policy or plan that violated the law."  *See Myers v. Hertz Corp*., 624 F.3d 537, 555 (2d Cir. 2010) (internal quotation omitted).

## Discussion

Under FLSA's opt-in class mechanism and the *ad hoc* approach approved in *Thiessen*, the Court must determine whether Plaintiffs have presented substantial allegations that the proposed class members were victims of a single decision, policy, or plan of Defendants that resulted in uncompensated overtime work.  By their Motion, Plaintiffs request conditional certification of a class of current and former employees of Defendants who performed duties of "field hands" and routinely worked overtime hours under a wage policy that paid each employee a salary and sometimes an additional sum but did not pay overtime compensation.

After careful consideration, the Court finds that Plaintiffs have shown a reasonable basis to believe there is a class of "similarly situated" employees of Defendants with similar overtime wage claims.  In making this determination, the Court states no opinion regarding the merits of the claims.  The Court simply finds that Plaintiffs have presented substantial allegations that Defendants employed numerous individuals who performed similar work of delivering and servicing oilfield rental equipment, and who were subjected to a companywide policy of paying salaries and additional wages but requiring work in excess of 40 hours in a single workweek without paying a higher rate of compensation for overtime hours as required by FLSA.

Although the Complaint alleges Plaintiffs worked for Defendants as "delivery drivers" or "fuelers," the declarations submitted in support of the Motion show that Plaintiffs and most employees who serviced oilfield rental equipment for Defendants identified themselves as "field hands."  One declarant was a "delivery driver" and none was a "fueler," but most had heard these terms.  Plaintiffs and other potential class members report varying job duties and wage practices.  However, all report doing manual "field" work for Defendants at a rate that exceeded 40 hours in a single work week without receiving additional compensation for overtime hours, and experiencing an employment practice of altering time sheets to understate the number of hours worked so not all work time was recorded.  All of the wage practices involved a salary, and most involved a mileage payment that constituted additional compensation rather than reimbursement for travel expenses; some individuals also received a per diem or bonus.  The FLSA does not prohibit paying non-exempt employees a salary,

9

but it does require the computation of a regular hourly rate of pay and requires compensation for overtime hours at the required time-and-a-half rate. *See* 29 C.F.R. § 778.113. All declarants make clear that they claim not to have received overtime pay for the overtime hours they worked.

The aspect of Plaintiffs' Motion that the Court finds problematic is the proposed class definition. Plaintiffs admit there was no job title for employees who did the type of work they and other similarly-situated employees performed, but they describe the class as salaried employees of Defendants who were employed as "field hands," which is not defined. At least one of the declarants did not consider himself to be a "field hand" and does not state a familiarity with that title. A potential class member who receives a notice utilizing Plaintiffs' class definition may or may not know whether he or she is a member. Notably, Plaintiffs propose a form of notice that includes a broader definition and includes other terms, such as "delivery driver," "fueler," "service man," and "shop hand." *See* Pls.' Mot. Conditional Certification, Ex. 6 [Doc. No. 31-6]. The Court finds that a description of the proposed class better than the one stated in Plaintiffs' Motion is needed.

Further, Plaintiffs propose a temporal limit to the class based on the three-year statute of limitations for a willful FLSA violation. However, the proposed time frame is unclear regarding a starting date. Argument in Plaintiffs' brief suggests their position to be that the class period would run from the date of an order granting conditional class certification and approving a form of notice. Plaintiffs' proposed form of notice suggests they would "insert 3 years prior to date of Notice" to define the class period. *Id*. Again, due to a lack of clarity,

Plaintiffs' proposed class definition is insufficient to permit former employees of Defendants to determine whether they fit within the defined class.

## Conclusion

For these reasons, the Court will conditionally certify a collective action under 29 U.S.C. § 216(b) for the purpose of giving notice of this overtime wage case to similarly situated employees of Defendants, but the Court declines to adopt Plaintiffs' definition of the proposed class or approve the form and manner of notice requested by Plaintiffs.  Because Defendants express in their briefs a willingness to negotiate mutually agreeable forms and terms of notice, the Court will direct counsel for the parties to confer regarding the language to be used in defining the putative class and giving notice of this action.  Counsel should also confer and propose a mutually agreeable deadline for filing opt-in consent forms and methods of providing the notice to potential class members.  Plaintiffs' counsel will be directed to inform the Court in writing whether an agreement can be reached and, if any issue is unresolved, what differences in the parties' positions remain for judicial decision.

IT IS THEREFORE ORDERED that Plaintiffs' Motion for Conditional Certification and Notice to Potential Class Members Pursuant to 29 U.S.C. § 216(b) [Doc. No. 31] is GRANTED in part and DENIED in part, as set forth herein.  Plaintiffs shall submit for the Court's approval within 21 days from the date of this Order, a jointly proposed order granting conditional class certification and approving a notice and opt-in consent forms.  If an agreement cannot be reached, Plaintiffs shall file a motion by that same date seeking

approval of their proposed forms and informing the Court of the nature of the parties'

disagreement.  If a motion is filed, Defendants shall respond within 14 days thereafter.

IT IS SO ORDERED this 9th day of September, 2016.


TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE